```
                IN THE UNITED STATES DISTRICT COURT
                 FOR THE SOUTHERN DISTRICT OF OHIO
                          EASTERN DIVISION
```

Monta Sue Johnson,                  :

      Plaintiff,               :

  v.                               :       Case No. 2:14-cv-306

                                      :       JUDGE JAMES L. GRAHAM
Commissioner of Social Security,            Magistrate Judge Kemp
                                      :
      Defendant.

### REPORT AND RECOMMENDATION

### I.  Introduction

    Plaintiff, Monta Sue Johnson, filed this action seeking review of a decision of the Commissioner of Social Security denying her applications for disability insurance benefits and supplemental security income.  Those applications were filed on April 8, 2010, and alleged that Plaintiff became disabled on November 1, 2007.

    After initial administrative denials of her claim, Plaintiff was given a video hearing before an Administrative Law Judge on October 10, 2012.  In a decision dated October 18, 2012, the ALJ denied benefits.  That became the Commissioner's final decision on February 4, 2014, when the Appeals Council denied review.

    After Plaintiff filed this case, the Commissioner filed the administrative record on July 1, 2014.  Plaintiff filed her statement of specific errors on September 2, 2014, to which the Commissioner responded on September 30, 2014.  Plaintiff filed a reply brief on October 20, 2014, and the case is now ready to decide.

### II.  Plaintiff's Testimony at the Administrative Hearing

    Plaintiff, who was 44 years old at the time of the administrative hearing and who has a GED, testified as follows.

Her testimony appears at pages 34-52 of the administrative record.

Plaintiff last worked in 2007.  She did various tasks at a K-Mart store.  She had been full-time but was demoted to part-time work because of problems with her work pace.  She quit that job after a confrontation with her supervisor.  Prior jobs included doing janitorial work and being a receptionist at an accounting firm.

Plaintiff testified that she could no longer work because she could neither tolerate the physical demands of work nor concentrate well enough to do the mental aspects of her job.  She could not sit or walk for extended periods and had chest pain on exertion.  Her other symptoms included neck, back, and leg pain, although she did not take pain medications.  She also suffered from COPD and needed to avoid extreme heat or extreme cold.

As far as her capabilities were concerned, Plaintiff said she could walk half a block, stand for twenty minutes, and sit for 20-30 minutes.  She had problems with her arm strength and at times could not pick up a cup or glass.  She also described psychological issues connected with being out in public or being around people.  She had problems with concentration.  Plaintiff was taking medication for anxiety.

On a typical day, Plaintiff might do some gardening or chores, but not every day.  She did care for her disabled daughter.  She usually lay down to rest at mid-morning.  She often got angry or stressed due to her inability to do things the way she used to, and would deal with that by isolating herself.  She had had counseling earlier in life due to PTSD resulting from abusive relationships, and still had flashbacks at times.

### III.  The Medical Records

The medical records in this case are found beginning on page 247 of the administrative record.  The pertinent records - those

relating to Plaintiff's two statements of error - can be summarized as follows.

As Plaintiff testified, she sought treatment in 2000 to deal with posttraumatic stress, anxiety, and depression.  Those impressions are stated in a number of office notes from her neurologist, who was treating her for headaches and neck pain as well as hypoglycemia.  She was apparently going to group counseling sessions at that time, but she was also employed.  She described her job as "helpful for her anxiety and mood disorders ...."  (Tr. 254).  The neurologist's notes contain no mention of limitations due to PTSD.  There are also records from Tri-County Mental Health and Counseling Services, Inc., showing termination of treatment in 2001 with no specific ongoing problems or needs.  The records state that Plaintiff had met her treatment goals.  (Tr. 323).

In 2006, Plaintiff had a stress test done due to complaints of chest pain.  The test was essentially negative.  Her myocardial perfusion scan was also within normal limits and she had a 66% ejection fraction.  In 2009 she was admitted to the emergency room after injuring her left ankle while working on her house.  Other problems she reported or was treated for during 2009 included hypothyroidism, allergies, and some back and knee pain which she was dealing with well since quitting her job.  (Tr. 291).  Prior records show treatment for asthma.  She reported bilateral wrist pain in 2007, when she was doing repetitive movements in connection with her job.  (Tr. 298).

In 2010, Plaintiff was diagnosed with an occlusive stenosis in her right coronary artery.  She had a stent implanted.  She was also noted as being in the early stages of COPD.

A consultative psychological examination was performed on November 13, 2010.  The examiner, Dr. Ward, reported that Plaintiff's disability application was, in her words, based on

her heart condition and her PTSD, and that she did not deal well with men such as her prior work supervisor. However, she was not under treatment for mental health conditions at the time. She presented as depressed, with a flat affect and an apprehensive facial expression. She also appeared anxious. Her attention and concentration were limited, and her daily activities were limited due to mental health problems. Dr. Ward diagnosed a depressive disorder and a generalized anxiety disorder and rated her GAF at 52. He found moderate limitations in Plaintiff's ability to relate to others, especially male supervisors, to maintain attention and concentration, persistence, and pace, and to deal with the stress of work situations. He did not think she would have much difficulty following simple instructions. (Tr. 341-45). Dr. Snyder subsequently concurred with that opinion. (Tr. 460-74).

     Plaintiff saw Dr. Padamadan for a physical consultative examination of December 7, 2010. She had undergone the stent placement shortly before that. She also reported a history of shortness of breath on exertion but did not report current breathing problems. She described some arthritis as well. The results of his examination were basically normal. He diagnosed her with coronary artery disease post-stent placement, a remote history of treatment for COPD, a history of neck pain without any functional impairment or radiculopathy, and a history of PTSD and anxiety and panic, which he did not evaluate. Dr. Padamadan concluded that she could sit, stand, walk, and carry 5-10 pounds frequently. (Tr. 451-53). Dr. Stevens, a medical consultant, concluded that she was a bit more capable and could do light work with lifting and carrying up to 20 pounds and standing and walking for six hours in a workday. (Tr. 510-16). However, Dr. Torello, a state agency physician, gave great weight to Dr. Padamadan's findings. (Tr. 545-46).

-4-

It appears that Plaintiff began treating with Dr. Denunzio in 2010 or 2011, and the record contains various office notes from the Woodsfield Clinic where she saw him.  The notes are fairly sparse and do not generally indicate any test or examination results or functional limitations.  Dr. Denunzio completes basic medical forms in late 2011 evaluating both her mental and physical capacity.  As to the latter, Dr. Denunzio said that Plaintiff was moderately limited in a number of activities such as pushing, pulling, bending, reaching, and performing repetitive movements, and markedly limited in hearing. He did not think she could stand, walk or sit for eight hours in a day but she could lift up to ten pounds occasionally and five pounds frequently.  He cited general weakness as the basis for his conclusions and also noted she would need to change positions.  (Tr. 619-20).

### IV.  The Vocational Testimony

Patricia Posey was the vocational expert in this case.  Her testimony begins on page 52 of the administrative record.

Ms. Posey testified that Plaintiff's past work included housekeeper cleaner, receptionist, and sales associate.  Those jobs were either semi-skilled or unskilled, and were performed at the light or sedentary exertional levels.

Ms. Posey was then asked some questions about a hypothetical person who could work only at the sedentary exertional level and who could not climb ladders, ropes, or scaffolds, or work around unprotected heights and hazardous machinery.  He or she needed to avoid even moderate exposure to fumes, odors, dust, gases, and poor ventilation.  The person could also occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs.  He or she needed a sit/stand option, being able to stand for 20 minutes at a time and to sit for thirty.  Finally, the person could understand, remember, and carry out simple instructions, could

not deal with specific production quotas or a fast pace, and could interact with the public, supervisors, or coworkers only occasionally.  According to Ms. Posey, someone with those limitations could work as a document preparer, surveillance system monitor, or food sorter.  She gave numbers for those jobs in the regional and national economies.

Next, Ms. Posey was asked if a person who had to lie down once every other day for an average of 45 minutes to an hour could do those jobs; she thought not.  The same would be true for someone off-task for two hours in a workday.  If the person were limited to frequent, but not constant, handling and fingering, he or she could do the three jobs which Ms. Posey identified, but if the limitation were to occasional rather than frequent handling and fingering, only the surveillance system monitor job would remain.  Finally, although the testimony on this point was less than clear, Ms. Posey stated that a person who reacted inappropriately to coworkers, supervisors, and the public ten percent of the time, day in and day out, would not likely be able to keep a job.

V.   The Administrative Law Judge's Decision

The Administrative Law Judge's decision appears at pages 10-23 of the administrative record.  The important findings in that decision are as follows.

The Administrative Law Judge found, first, that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2012.  Next, he found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of November 1, 2007.  Going to the second step of the sequential evaluation process, the ALJ determined that Plaintiff had severe impairments including coronary artery disease with a history of angioplasty and stent placement, hypertension, hypothyroidism, chronic obstructive pulmonary disease, history of

neck and low back pain syndrome, depressive disorder, and generalized anxiety disorder. The ALJ also found that these impairments did not, at any time, meet or equal the requirements of any section of the Listing of Impairments (20 C.F.R. Part 404, Subpart P, Appendix 1).

Moving to step four of the sequential evaluation process, the ALJ found that Plaintiff had the residual functional capacity to perform work at the sedentary exertional level except she could lift and carry five to ten pounds frequently. She could not climb ladders, ropes or scaffolds; could occasionally balance, kneel, crouch, crawl, and climb ramps and stairs; had to avoid even moderate exposure to extreme cold, heat, humidity, vibration, fumes, gases, odors, dust, poor ventilation, and hazards such as heights or machinery; needed to alternate between sitting and standing; could understand, remember, and carry out only simple instructions; could not work with specific production quotas or at a fast pace; and could interact only occasionally with the public, coworkers, and supervisors.

The ALJ found that, with these restrictions, Plaintiff could not do her past work. However, he also determined that she could do the jobs identified by the vocational expert, including document preparer, surveillance system monitor, and food sorter. The ALJ further found that such jobs existed in significant numbers in the regional and national economies. Consequently, the ALJ concluded that Plaintiff was not entitled to benefits.

### VI. Plaintiff's Statement of Specific Errors

In her statement of specific errors, Plaintiff raises these issues: (1) the ALJ erred in not finding that Plaintiff's PTSD and carpal tunnel syndrome were severe impairments and not evaluating their impact on her residual functional capacity; and (2) the ALJ violated the "treating physician" rule found in 20 C.F.R. §404.1527(c) with respect to the opinion of Dr. Denunzio.

These issues are evaluated under the following legal standard.

<u>Standard of Review.</u> Under the provisions of 42 U.S.C. Section 405(g), "[t]he findings of the Secretary [now the Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'" <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (quoting <u>Consolidated Edison Company v. NLRB</u>, 305 U.S. 197, 229 (1938)). It is "'more than a mere scintilla.'" <u>Id</u>. <u>LeMaster v. Weinberger</u>, 533 F.2d 337, 339 (6th Cir. 1976). The Commissioner's findings of fact must be based upon the record as a whole. <u>Harris v. Heckler</u>, 756 F.2d 431, 435 (6th Cir. 1985); <u>Houston v. Secretary</u>, 736 F.2d 365, 366 (6th Cir. 1984); <u>Fraley v. Secretary</u>, 733 F.2d 437, 439-440 (6th Cir. 1984). In determining whether the Commissioner's decision is supported by substantial evidence, the Court must "'take into account whatever in the record fairly detracts from its weight.'" <u>Beavers v. Secretary of Health, Education and Welfare</u>, 577 F.2d 383, 387 (6th Cir. 1978) (quoting <u>Universal Camera Corp. v. NLRB</u>, 340 U.S. 474, 488 (1951)); <u>Wages v. Secretary of Health and Human Services</u>, 755 F.2d 495, 497 (6th Cir. 1985). Even if this Court would reach contrary conclusions of fact, the Commissioner's decision must be affirmed so long as that determination is supported by substantial evidence. <u>Kinsella v. Schweiker</u>, 708 F.2d 1058, 1059 (6th Cir. 1983).

### A. <u>PTSD and Carpal Tunnel Syndrome</u>

In her first assignment of error, Plaintiff acknowledges that it can be harmless error for an ALJ not to include severe impairments in the step two finding as long as the limitations flowing from those impairments are included in the residual functional capacity finding. She claims, however, that the ALJ did not account in any way for the hand and wrist limitations

-8-

which were caused by Plaintiff's carpal tunnel syndrome, nor did he include any restrictions in her mental residual functional capacity due to PTSD even though that impairment caused her to be more limited in her ability to deal with certain stressful situations than the ALJ found her to be.

Plaintiff is correct that these two claimed impairments drew little attention from the ALJ. His decision mentions PTSD only in connection with his review of her hearing testimony (Tr. 18) - he does not list it as one of the impairments which had been diagnosed by any mental health provider - and the decision describes carpal tunnel syndrome as an impairment which was "well controlled or produced no significant symptoms." (Tr. 15). The questions presented by this statement of error are (1) whether any symptoms attributed to Plaintiff's PTSD were accommodated by the ALJ's residual functional capacity finding, and (2) whether the statement he made about the lack of symptoms stemming from her carpal tunnel syndrome is supported by substantial evidence. See, e.g., Angelo v. Comm'r of Social Security, 2013 WL 765646, *6 (S.D. Ohio Feb. 28, 2013), adopted and affirmed 2013 WL 1344841 (S.D. Ohio Apr. 2, 2013)(finding no reversible error where "[t]he ALJ considered plaintiff's nonsevere impairments together with his severe impairments in the remaining steps of the sequential evaluation process and *properly* accounted for the limitations imposed by both")(emphasis supplied).

The RFC finding in this case incorporated a significant number of psychologically-based limitations, including only occasional interaction with supervisors. The evidence concerning the effect of Plaintiff's PTSD is most specifically spelled out in Dr. Ward's report, where he stated that Plaintiff "would have some difficulty with interactions with male supervisors based on her history ...." (Tr. 345). Overall, however, he classified Plaintiff's impairment in the area of relating to others as "moderate" and did not say she was completely precluded from

working with male supervisors. His views were subsequently confirmed by a reviewing source. Thus, even though the ALJ did not specifically tie the restriction on more than occasional interaction with supervisors to Plaintiff's PTSD, he did accommodate the only functional limitation which anyone attributed to that disorder. There is thus no error in the way he dealt with Plaintiff's PTSD.

As to the carpal tunnel syndrome, Plaintiff does not point to any portion of the record where specific limitations are attributed to this impairment. She speculates that when Dr. Denunzio expressed limitations on her ability to reach, handle, finger, or feel, he did so due to carpal tunnel syndrome, but the record does not support that conclusion - or, at least, it does not compel it. None of his office notes mention that diagnosis, and it is not listed on the form he filled out which indicates limitations in those areas. Finally, the ALJ did ask some questions to the vocational expert about someone who could not constantly finger or handle objects, which would have given some credence both to Plaintiff's testimony and Dr. Denunzio's opinion, and Ms. Posey's response was that the jobs she identified could be performed by someone with those limitations. Under these circumstances, the ALJ's conclusion that Plaintiff had no limitations arising from carpal tunnel syndrome either correctly mirrored the evidence of record or constituted harmless error.

## B. The Treating Physician Rule

The only treating source opinion came from Dr. Denunzio. The ALJ gave his opinion little weight, finding that it was inconsistent with the other evidence in the record, including Plaintiff's own report concerning her functional capacity. Plaintiff argues that the ALJ did not articulate good reasons for rejecting that opinion, as is required by 20 C.F.R. §404.1527(c), and also that he should have accorded more weight to the opinion.

-10-

Because Plaintiff's argument appears to focus only on the physical limitations which Dr. Denunzio found (he also completed a mental residual functional capacity assessment which the ALJ rejected), the Court will limit its discussion to the former opinion.

Any analysis of this issue begins with what the ALJ actually said about the treating source opinion, and that was this:

> On November 25, 2011, Charles Denunzio, D.O., from Ohio Job and Family Services, completed a Residual Functional Capacity (Physical).  Dr. Denunzio opined the claimant could stand and walk a total of two hours in an eight-hour day, 30 minutes without interruption, sit for a total of two hours in an eight-hour day, two hours without interruption; lift and carry ten pounds occasionally and five pounds frequently; has markedly limited ability to hear and moderately limited ability for pushing, pulling, bending, reaching, handling, performing repetitive foot movements, and speaking; her physical and mental limitations are expected to last 12 months or more.  Dr. Denunzio did not indicate whether the claimant was employable or non-employable (Exhibit 32F, page 2).  Dr. Denunzio's opinion is inconsistent with other evidence of record, including the claimant's own reported abilities.  On the Personal Pain Questionnaire dated May 26, 2010, Ms. Johnson reported she is able to walk one mile (Exhibit 4E). Additionally, Dr. Denunzio did not including (sic) audiologic evidence to support the claimant's marked limitation of hearing.  Therefore, the undersigned gives little weight to Dr. Denunzio's opinion, as inconsistent with other evidence of record.  The undersigned has considered and evaluated all the evidence of record, including the hearing testimony.

(Tr. 20).  Earlier in his decision, the ALJ said that he gave significant weight to the opinions of Drs. Padamadan and Torello, the consultative examiner and state agency reviewer, because they were "consistent with other evidence of record." (Tr. 19).  The only other clues to the ALJ's reasoning process come from his discussion of Plaintiff's credibility, where he commented that her daily activities were not limited to the extent one would

-11-

expect "given the complaints of disabling symptoms and limitations" and that she "has not generally received the type of medical treatment one would expect for a totally disabled individual." (Tr. 18). The ALJ never specified which parts of the evidence of record, medical or otherwise, were either "consistent" with the state agency reviewers' opinions or "inconsistent" with the opinion of Dr. Denunzio.

It has long been the law in social security disability cases that a treating physician's opinion is entitled to weight substantially greater than that of a nonexamining medical advisor or a physician who saw plaintiff only once. 20 C.F.R. §404.1527(c); see also Lashley v. Secretary of H.H.S., 708 F.2d 1048, 1054 (6th Cir. 1983); Estes v. Harris, 512 F.Supp. 1106, 1113 (S.D. Ohio 1981). However, in evaluating a treating physician's opinion, the Commissioner may consider the extent to which that physician's own objective findings support or contradict that opinion. Moon v. Sullivan, 923 F.2d 1175 (6th Cir. 1990); Loy v. Secretary of HHS, 901 F.2d 1306 (6th Cir. 1990). The Commissioner may also evaluate other objective medical evidence, including the results of tests or examinations performed by non-treating medical sources, and may consider the claimant's activities of daily living. Cutlip v. Secretary of HHS, 25 F.3d 284 (6th Cir. 1994). No matter how the issue of the weight to be given to a treating physician's opinion is finally resolved, the ALJ is required to provide a reasoned explanation so that both the claimant and a reviewing Court can determine why the opinion was rejected (if it was) and whether the ALJ considered only appropriate factors in making that decision. Wilson v. Comm'r of Social Security, 378 F.3d 541, 544 (6th Cir. 2004).

The Commissioner offers little in the way of argument in support of the adequacy of the ALJ's statement of reasons, especially as it relates to Dr. Denunzio's assessment of

Plaintiff's physical capabilities.  The only specific evidence which the Commissioner identifies as being inconsistent with Dr. Denunzio's opinions relates to his finding that Plaintiff had marked restrictions in understanding and remembering very short and simple instructions - something that was part of his mental functional capacity evaluation.  Otherwise, the Commissioner cites only to the contrary opinions of the state agency reviewers - which, by themselves, do not constitute grounds for assigning little or no weight to the opinion of a treating source, see Hensley v. Astrue, 573 F.3d 263, 267 (6th Cir. 2009) - and "the hearing testimony."  Commissioner's Memorandum, Doc. 14, at 8.

    Here, the ALJ's opinion does not identify any portion of the hearing testimony which allegedly conflicts with Dr. Denunzio's opinions.  Nor does it identify the supposedly inconsistent parts of the medical record (or the parts which are purportedly consistent with the opinions of the state agency reviewers).  The type of wholly conclusory and generalized statements used by the ALJ in this case have consistently been deemed to be inadequate explanations under the "treating physician" rule.  As this Court explained in Hardy v. Comm'r of Social Security, 2013 WL 4546508, *5 (S.D. Ohio Aug. 28, 2013), adopted and affirmed 2014 WL 1091718 (S.D. Ohio March 18, 2014),

> One of the reasons why an ALJ must articulate the basis of his or her rejection of a treating source's opinion is to allow the reviewing Court to determine if the rejection is properly based upon the evidence of record. See Wilson, supra; see also Bowen v. Comm'r of Social Security, 478 F.3d 742, 749 (6th Cir.2007) ("the goals of § 1527(d)(2) cannot be satisfied by bald speculation"). As the Court of Appeals has observed, "it is not enough to dismiss a treating physician's opinion as 'incompatible' with other evidence of record; there must be some effort to identify the specific discrepancies and to explain why it is the treating physician's conclusion that gets the short end of the stick." Friend v. Comm'r of Social Security, 375

> Fed. Appx. 543, 552 (6th Cir. Apr.28, 2010). See also Blackburn v. Colvin, 2013 WL 3967282, *7 (N.D.Ohio July 21, 2013) (finding the ALJ's articulation of this factor inadequate because "[w]hile the ALJ concluded that the treating physician's opinions were inconsistent with the medical evidence, he does not offer any explanation for his conclusion"). The same is true here; ... there is absolutely nothing in the ALJ's decision which would allow either the plaintiff or this Court to determine what part of the medical record the ALJ found to be inconsistent with [the treating source]'s opinions.

This Court simply cannot interpret the ALJ's decision here, nor effectively review it, as it relates to the medical evidence.

What is left, then, is the ALJ's citation to the questionnaire which Plaintiff completed in 2010. On that form, she described constant pain in her back, knees, neck, and both hands, brought on by any type of activity. She said the only way to prevent the pain was not to do anything. She did report being able to walk a mile and to sit or stand for 20 minutes at a time, and noted she did not drive a car. (Tr. 197-99). Her testimony at the hearing was somewhat different, but the statements she made on the questionnaire do not describe someone who is very much more able than the way Dr. Denunzio described her. The Court cannot find that the information on that sheet, taken in complete isolation, constituted a good reason for assigning no weight to the opinion of a treating physician. Consequently, there is merit in Plaintiff's second statement of error.

Wilson recognized that in the rare case, this type of articulation error might be harmless, such as when "a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it...." Wilson, 378 F.3d at 547. The Commissioner has not argued harmless error with respect to this assignment of error and has waived this argument. Further, even when the treating source opinion has some obvious deficiencies, the Court of Appeals has said that "'[w]e do not hesitate to

-14-

remand when the Commissioner has not provided "good reasons" for the weight given to a treating physician's opinion and we will continue remanding when we encounter opinions from ALJ's that do not comprehensively set forth the reasons for the weight assigned to a treating physician's opinion.'" Hensley v. Astrue, 573 F.3d 263, 267 (6th Cir. 2009), quoting Wilson, 378 F.3d at 545.  That result should occur here as well so that the ALJ may provide a more comprehensive and reviewable statement of reasons concerning Dr. Denunzio's opinions about Plaintiff's physical capabilities.

## VII.  Recommended Decision

Based on the above discussion, it is recommended that the Plaintiff's statement of errors be sustained to the extent that the case be remanded to the Commissioner for further proceedings pursuant to 42 U.S.C. §405(g), sentence four.

## VIII.  Procedure on Objections

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s).  A judge of this Court shall make a de novo determination of those portions  of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District

Court adopting the Report and Recommendation.  See Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).

                                          /s/ Terence P. Kemp
                                          United States Magistrate Judge